# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DANIEL J. RISKIN, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 2019-0570-KSJM |
| | ) |
| BRENTON BURNS; MARY BETH JENKINS; RAYMOND SCOTT; JOHN STEPHEN WHITEHURST; SCOTT HUEBNER; JOHN KUZMISHIN; FRED SCHWARZER; CRAIG GOMULKA; CHARLES TALBOT HEPPENSTALL, JR.; UNIVERSITY OF PITTSBURGH MEDICAL CENTER, a Pennsylvania corporation; UPMC PRESBYTERIAN SHADYSIDE, a Pennsylvania corporation; UPMC HEALTH PLAN, INC., a Pennsylvania corporation; CHARTER LIFE SCIENCES (OHIO) II, L.P., a Delaware limited partnership; CHARTER LIFE SCIENCES II, L.P., a Delaware limited partnership; CLS PARTNERS II (OHIO), LLC, a Delaware limited liability company; CLS PARTNERS II, L.P., a Delaware limited partnership; CLS MANAGEMENT II, LLC, a Delaware limited liability company, and HEALTH FIDELITY, INC., a Delaware corporation. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## ORDER RESOLVING DEFENDANTS' MOTIONS TO DISMISS COUNTS IV, V, AND VI

1. The factual background in the Memorandum Opinion issued on December 30, 2020 (the "Memorandum Opinion"), supplies the background to this

Order. Defined terms used in this Order have the same meaning ascribed to them in the Memorandum Opinion.

2. The Memorandum Opinion dismissed Count I under Court of Chancery Rule 12(b)(6), portions of Count II on the basis of laches, and the remainder of Count II as to Charter under Rule 12(b)(6). An Order issued contemporaneously with the Memorandum Opinion granted Heppenstall and the UPMC Affiliates' motions to dismiss under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction. This order addresses Defendants' motions to dismiss Counts IV, V, and VI.

3. In Count IV, Plaintiff seeks declaratory judgment that Health Fidelity failed to comply with the prompt notice requirement of Section 228(e) of the DGCL in connection with the June 2016 Bridge Financing and 2017 Series B Financing stockholder consents.

a. Section 228(e) of the DGCL requires that when corporate action is taken "without a meeting by less than unanimous consent," the stockholders who did not consent must receive "[p]rompt notice."[1] "Prompt notice to the minority stockholders is of critical importance."[2] That is because "Section 228 ensures some level of transparency for non-consenting

---

[1] 8 *Del. C.* § 228(e).

[2] *Brown v. Kellar*, 2018 WL 6721263, at *10 (Del. Ch. Dec. 21, 2018).

2

stockholders" and allows them to "stay abreast of corporate decision-making and maintain the accountability of boards of directors and controlling stockholders."[3]

b. "Prompt" notice under Section 228(e) is not defined by statute. There is probably an outer limit of delay that would presumptively violate Section 228(e)'s prompt notice requirement. For example, it would be difficult to conclude that notice sent a few years after the stockholder written consent was issued is sufficiently prompt. Short of that outer limit, what constitutes prompt notice for Section 228(e) is a context-specific inquiry, as the two cases that have addressed this requirement illustrated.

c. In *Di Loreto v. Tiber Holding Corp.*, the court held that a five-month delay was not prompt where the stockholder who should have received notice under Section 228(e) was in litigation and settlement communications concerning the transaction approved by stockholder consent.[4]

d. In *Mehta v. Mobile Posse, Inc.*, the court held that a seventeen-day delay was not prompt where the transaction approved by written consent

---

[3] *Espinoza v. Zuckerberg*, 124 A.3d 47, 57, 65 (Del. Ch. 2015).

[4] 1999 WL 1261450, at *4–5 (Del. Ch. June 29, 1999).

itself triggered a fourteen-day notice obligation under Section 262 of the DGCL.[5]

e.  In this case, Plaintiff was not provided notice of the June 30, 2016 stockholder consent authorizing the June 2016 Bridge Financing until December 7, 2016—approximately five months later.  And Plaintiff was not provided notice of the December 21, 2017 Series B Financing stockholder consent until August 17, 2018—approximately eight months later.

f.  It is reasonably conceivable that delays of this length violated Section 228(e)'s prompt notice requirement, and Plaintiff is entitled to discovery concerning the circumstances surrounding the delay.

g.  The motion to dismiss Count IV is therefore denied.

4.  In Count V, Plaintiff seeks a declaration that the 2016 Bridge Financing Warrants violated Section 157 of the DGCL because the Board failed to determine the exercise price for the warrants at the time of the stock issuance.[6]

a.  Section 157(b) provides, as excised by Plaintiff to highlight the language on which Plaintiff relies, that

> [t]he terms upon which . . . and the consideration . . . for which any such shares may be acquired from the corporation upon the exercise of any such right or option . . . in every case, shall be set forth or incorporated

---

[5] 2019 WL 2025231, at *10 (Del. Ch. May 8, 2019).

[6] Pl.'s Answering Br. at 118.

4

by reference in the instrument or instruments evidencing such rights or options.[7]

b.     Plaintiff does not plead a straightforward violation of the above-quoted language; rather, Plaintiff's theory is more circuitous. Plaintiff notes that the Bridge Financing Warrants state that the exercise price shall be the "fair market value of the Common Stock at the time of issuance of the Warrant, as determined by Health Fidelity's Board of Directors."[8] Plaintiff alleges that the Board failed to make this determination.

c.     As support for the allegation that the Board failed to make such a determination, Plaintiff points to a lack of evidence. Specifically, Plaintiff requested Board materials concerning this issue as part of his pre-suit investigation pursuant to Section 220 of the DGCL. According to Plaintiff, the materials did not reflect any Board determination of the fair market value of the common stock at the time of the issuance of the Warrant.[9] At a minimum, corporate board minutes record actions taken by the Board.[10] Thus,

_____

[7] 8 *Del. C.* § 157(b).

[8] Am. Compl. ¶ 162.

[9] Pl.'s Answering Br. at 119 (stating that "there is no evidence that the Health Fidelity Board determined the fair market value of the Common Stock shares at the time that Stock was issued in connection with the Bridge Financing Warrants").

[10] Optimally, Board minutes would be more comprehensive. *See generally* John Mark Zeberkiewicz & Robert B. Greco, *Drafting Minutes and Preparing Disclosures in the Post-Corwin Era*, 33 Insights: The Corporate and Securities Law Advisor 17, 21 (2019) (acknowledging that "practitioners should ensure that [board] minutes appropriately reflect the directors' decision-making process" but suggesting that practitioners "avoid going out

the fact that the Board minutes did not indicate any determination makes it reasonably conceivable that the Board did not make a recommendation and thus failed to comply with Section 157(b).

d.   In response to this argument, Defendants dispute the facts, arguing that the Board relied on its most recent Section 409A valuation to establish the fair market value for stock issued in connection with the Bridge Financing Warrants. Health Fidelity contends that Plaintiff conceded this point in his original complaint but then "removed this concession from his Amended Complaint."[11]  Plaintiff should, according to Defendants, "be held to the concession of his original complaint."[12]  But the latest complaint—the Amended Complaint—superseded the original complaint and rendered it of no legal effect.[13]  At this pleading stage, the court must accept the allegations in the Amended Complaint as true. Accepting those allegations as true,

---

of their way to craft a particular narrative" (internal quotation marks omitted)); Cullen M. Godfrey, *In re the Walt Disney Company Derivative Litigation:  A New Standard for Corporate Minutes*, 17 Bus. L. Today 47, 49 (2008) ("[F]ollowing the Delaware Supreme Court's *Disney* decision, in order to assure that a corporate board gets the benefit of the business judgment rule, corporate minutes must be comprehensive, definitive, and inclusive of all of the materials, at least by reference, that the board considered prior to making its decision.").

[11] Health Fidelity Reply Br. at 20 (citing Compl. ¶ 8).

[12] *Id.* at 21.

[13] *See McCaffrey v. City of Wilmington*, 133 A.3d 536, 544 (Del. 2016) ("The latest complaint, the second amended complaint, superseded the earlier complaints and rendered them of no legal effect.").

Plaintiff has not conceded facts regarding the fair market value for stock issued in connection with the Bridge Financing Warrants, as Health Fidelity contends he does.[14]

    e.    The motion to dismiss Count V is therefore denied.

5.    In Count VI, Plaintiff requests a declaration that the August 2017 Certificate of Incorporation Amendment, which purported to expand the Board to allow for the appointment of Huebner, is void *ab initio* under Section 242 of the DGCL because the amendment was not recommended and approved by the Board.

    a.    Section 242 provides that, in order to amend a certificate of incorporation, a board of directors must "adopt a resolution setting forth the amendment proposed, [and] declar[e] its advisability."[15] The board must then submit that resolution to the company's shareholders for approval.[16] Plaintiff alleges that the Board failed to adopt a resolution declaring the amendment advisable.

---

[14] In my view, it is unclear whether a failure by the Board to determine the fair market value of the Common Stock at the time of the issuance of the Warrant would give rise to a violation of Section 157, as Plaintiff argues, or give rise instead to some other challenge to the stock issuance. The parties did not tease out this issue in briefing or oral argument. This decision thus declines to puzzle through the issue independently and focuses instead on the arguments raised by the parties.

[15] 8 *Del. C.* § 242(b)(1).

[16] *Id.*

b.      As support for the allegation that the Board failed to adopt a resolution, Plaintiff again points to a lack of evidence. The Board minutes, which Plaintiff inspected prior to filing this action, do not reflect any resolution declaring the amendment advisable.[17] This too is the sort of thing that would normally be captured by Board minutes.[18] The fact that the Board minutes did not indicate any resolution makes it reasonably conceivable that the Board did not adopt a resolution and thus failed to comply with Section 242.

c.      Defendants respond that Plaintiff waived any right to challenge the amendment because he executed a stockholder consent approving it. This is an interesting argument, which Defendants fail to support with any case law or other authority. Defendants are granted leave to submit supplemental briefing on this point should they choose to pursue this argument, and the

---

[17] *See, e.g.*, Am. Compl. ¶ 212 ("In taking these actions, however, Controller Defendants disregarded the fact that Health Fidelity is managed under the direction of Health Fidelity's Board, not UPMC . . . ."); *id.* ¶ 213 ("UPMC Enterprises and Charter adopted this amendment on their own accord and without prior Health Fidelity Board approval."); *id.* ¶ 217 ("[Riskin] had been misled into believing that the August 2017 [Certificate of Incorporation] Amendment was approved and recommended by Health Fidelity's Board."); *id.* ¶ 452 ("The August 2017 [Certificate of Incorporation] Amendment was adopted by the stockholders (and was later filed with the Delaware Secretary of State) without Health Fidelity's Board approving the amendment, declaring it advisable, or recommending it to the stockholders for adoption in violation of DGCL Section 242.").

[18] *See supra* note 10.

8

court will hold the motion as to Count VI in abeyance pending resolution of such briefing.

6.      For the foregoing reasons, the motions to dismiss Counts IV and V are DENIED.  The motion to dismiss Count VI is held in abeyance.

IT IS SO ORDERED.

/s/ Kathaleen St. Jude McCormick
Vice Chancellor of the Court of Chancery
December 31, 2020